
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **TOMMY L. GOFF** | § | Case No. 11-40996 |
| xxx-xx-6120 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| GRAHAM MORTGAGE CORP. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 11-4206 |
| | § | |
| TOMMY L. GOFF | § | |
| | § | |
| Defendant | § | |

# FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint in the above-referenced adversary proceeding, the

Court issues the following findings of fact and conclusions of law pursuant to Fed. R.

Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R.

Bankr. P. 7052.

## *FINDINGS OF FACT*

1. The complaint seeks to oppose the entry of a discharge order in favor of the Debtor-Defendant, Tommy L. Goff (the "Debtor" or "Goff") under 11 U.S.C. §727(a)(3), or, in the alternative, it seeks a determination of the dischargeability of the particular debt owing by the Debtor-Defendant to the Plaintiff, Graham Mortgage Corporation ("Plaintiff" or "Graham").

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

2. Plaintiff made a loan to Goff Development, Ltd. on or about November 19, 2007, in the original principal amount of $4,800,000.00 (the "Loan").[2]

3. On or about November 19, 2007, Goff Development, Ltd. executed and delivered to Plaintiff a Deed of Trust Note in the original principal amount of $4,800,000.00 (the "Note"), evidencing the Loan.[3]

4. On or about November 19, 2007, Defendant executed and delivered to Plaintiff an Unconditional Guaranty, whereby Defendant unconditionally guaranteed payment of all monies due under the Note up to an amount of principal and interest of $2,400,000.00, plus expenses enumerated therein.[4]

5. As a precondition to making the Loan, Plaintiff required Defendant to execute an unconditional guarantee of payment to secure Goff Development's performance under the Note.[5]

6. To determine Defendant's ability to guarantee such payment of the Note in the event of default by Goff Development, Plaintiff also required Defendant to provide supporting financials to reflect a complete and accurate picture of Defendant's financial condition.[6]

7. According to Defendant's written Estimate of Financial Condition (the "Estimate") which Defendant provided to Plaintiff on or about June 30, 2007, per Plaintiff's request and as a requirement as part of Plaintiff's review and consideration of the proposed terms of the Loan, all of which occurred less than four years prior to the filing of Defendant's bankruptcy petition, Defendant owned assets in excess of $15 million and claimed a net worth in excess of $12 million.[7]

---

[2] Stipulated Fact #1.

[3] Stipulated Fact #2.

[4] Stipulated Fact #3.

[5] Stipulated Fact #15.

[6] *Id.*

[7] Stipulated Fact #7.

8. Along with the Estimate, Defendant submitted to Plaintiff supporting financial statements of each entity in which he disclosed he had an interest (the "Financial Statements"). The Estimate and Financial Statements are collectively referred to herein as the "Financials."[8]

9. Plaintiff relied on the Financials to determine Defendant's financial condition at the time the Loan was made. To date, Plaintiff has been unable to determine with any certainty the transfer of more than $12,000,000.00 of Debtor's net worth.[9]

10. The Estimate provided by the Defendant to Plaintiff was erroneous. Specifically, Defendant's net worth was misstated, and Defendant does not have documentation to support all assets listed on the Estimate.[10]

11. At all relevant times, Plaintiff was the current owner and holder of the Note and Guaranty (the "Loan Documents").[11]

12. At all relevant times, Plaintiff was entitled to recover all monies due and owing under the terms of the Loan Documents.[12]

13. Upon default by Goff Development, Ltd. and Defendant under the Loan Documents, Plaintiff made demand, and subsequently filed suit against both defaulting parties in the 14th Judicial District Court of Dallas County.[13]

14. The state court trial between the Plaintiff and the Defendant began before the 14th Judicial District Court of Dallas County, Texas, on October 19, 2010, and concluded on October 20, 2010. The state court conducted a full evidentiary trial before a jury with consideration of all evidence in favor of the Plaintiff as well as

---

[8] Stipulated Fact #8.

[9] Admitted Material Fact #10. It and the other Admitted Material Facts referenced herein were established as facts "admitted to exist without controversy" under E.D. TEX. LOCAL R. CV–56(c), and are contained in that certain "Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment" entered on October 22, 2012.

[10] Stipulated Fact #14.

[11] Stipulated Fact #4.

[12] Admitted Material Fact #4.

[13] Stipulated Fact #5.

the evidence supporting the defenses of the Defendant and Goff Development, Ltd.

15. Plaintiff obtained a Final Judgment against Goff Development, Ltd. and the Defendant on or about November 12, 2010 (the "Judgment").[14]

16. Based upon jury findings of the issues, the 14th Judicial District Court entered the Judgment for the Plaintiff and against the Defendant, jointly and severally with Goff Development, Ltd., in the amount of $2,636.796.50, together with an award of attorney's fees of $40,524.50, with post-judgment interest thereon at the rate of 13.5% per annum along with all costs taxed to the Defendant.

17. To date the Judgment remains unsatisfied.[15]

18. Some four months after the issuance of the Judgment, on March 31, 2011, the Defendant filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code.[16]

19. On or about June 14, 2011, Plaintiff filed its Motion for Examination of Defendant Under Federal Rule of Bankruptcy Procedure 2004 (the "2004 Exam") which included a request for production of documents. Prior to the 2004 Exam, Defendant provided several boxes of documents to Plaintiff in response to the request for production.[17]

20. During the continued 341 Meeting of Creditors held on June 24, 2011, Defendant testified under oath that he "threw away" a personal computer which possibly contained information in connection with his financial condition and that of his related businesses.[18]

21. During the Defendant's 2004 Exam conducted on July 6, 2011, Plaintiff questioned Defendant about the apparent absence of records and documents pertaining to Defendant and entities Defendant apparently owned or controlled.[19]

---

[14] *Id.*

[15] Admitted Material Fact #6.

[16] Stipulated Fact #6.

[17] Stipulated Fact #9.

[18] Stipulated Fact #10.

[19] Stipulated Fact #11.

22. Specifically, Defendant admitted to neither maintaining nor keeping various records relevant to his personal financial condition, the financial condition of entities he owned or controlled, transactions between entities he owned or controlled and the source of funds used to finance his businesses.[20]

23. Notably, Defendant admitted to giving away one of his three computers which may or may not have contained financial information relevant to the instant case.[21]

24. Subsequent to the 2004 Exam, Defendant provided supplemental documentation to Plaintiff in response to the Defendant's request for production. Specifically, Debtor referred to a closing statement that "a title company would certainly . . . be able to produce" evidencing the source of funds used to purchase certain real property.[22]

25. However, Debtor has failed to contact any title company to obtain such records. Defendant expressly admitted during the 2004 Exam that documents may exist which have not been produced.[23]

26. On November 4, 2011, Plaintiff filed its complaint in this adversary proceeding, seeking to deny the entry of a discharge in favor of Defendant pursuant to §707(a)(3) and, alternatively, seeking a determination that the debt arising from the Judgment is non-dischargeable pursuant to §523(a)(2)(B).

27. In prosecution of its adversary complaint, Plaintiff employed Matt Donnell and Kendall Helfenbein, a certified public accountant, to provide both a thorough analysis of the financial documentation already provided by Defendant, and a detailed listing of documentation still missing and/or needed to accurately gauge Defendant's financial condition prior to bankruptcy.[24]

---

[20] *Id.*

[21] *Id.*

[22] Stipulated Fact #12.

[23] *Id.*

[24] Admitted Material Fact #15.

28. On or about April 6, 2012, in an effort to obtain the missing information identified by Helfenbein, Plaintiff (with the assistance of Helfenbein) drafted and served its First Request for Production of Documents Directed to Defendant ("First Request for Production"), requesting date-specific general ledgers, financial statements, tax returns and bank statements relating to Defendant and various entities owned or controlled by Defendant.[25]

29. In response to the First Request for Production, Defendant made available several additional boxes of documents and a compact disc containing various files for inspection by Plaintiff. The documents in the boxes and on compact disc, however, did not include a substantial amount of the information requested by Plaintiff.[26]

30. The accounting evidence confirms that such missing documents exist but have not been provided to date, and a significant amount of records produced by Defendant are incomplete.[27]

31. The missing information makes it impossible for Plaintiff to ascertain Defendant's true financial condition or trace the disposition of Defendant's assets prior to his filing for Chapter 7 bankruptcy.[28]

*Partial Summary Judgment - §727(a)(3)*

32. On July 13, 2012, the Plaintiff filed a Motion for Partial Summary Judgment, asserting that there was no genuine issue of material fact over whether Defendant failed to keep and preserve his financial records and that such a failure prevented the Plaintiff from ascertaining the Debtor's financial condition.

---

[25] Admitted Material Fact #17.

[26] Admitted Material Fact #18.

[27] Admitted Material Fact #19.

[28] Admitted Material Fact #23.

33. The Court, in its scheduling order entered in this case on February 23, 2012,[29] specifically stated that motions for summary judgment in this adversary proceeding would be required to comply in format and content with E.D. TEX. LOCAL R. CV–56(c) and that such motions would be decided under the procedures stated therein..

34. A portion of the procedures established under E.D. TEX. LOCAL R. CV–56 provides that:

> (b) **Response**. Any response to a motion for summary judgment must include: (1) any response to the statement of issues; and (2) any response to the "Statement of Undisputed Material Facts." The response should be supported by appropriate citations to proper summary judgment evidence as set forth below. *Proper summary judgment evidence should be attached to the response in accordance with section (d) of this rule.*
>
> (c) **Ruling**. In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment.
>
> (d) **Proper summary judgment evidence**. As used within this rule, "proper summary judgment evidence" means excerpted copies of pleadings, depositions, documents, electronically stored information, answers to interrogatories, admissions, affidavits or declarations, stipulations (including those made for purposes of the motion only), and other admissible evidence cited in the motion for summary judgment or the response thereto. The phrase "appropriate citations" means that any excerpted evidentiary materials that are attached to the motion or the response should be referred to by page and, if possible, by line. Counsel are strongly encouraged to highlight or

---

[29] *Scheduling Order Arising from Management Conference* entered in this case on February 23, 2012 [dkt #7].

   underline the cited portion of any attached evidentiary materials, unless the citation encompasses the entire page. The page preceding and following a highlighted page may be submitted if necessary to place the highlighted material in its proper context. Only relevant, cited-to excerpts of evidentiary materials should be attached to the motion or the response.

35. Though the Defendant responded to the summary judgment motion with argument regarding the statement of material facts offered by the Plaintiff, he did not support those responses "by appropriate citations to proper summary judgment evidence."

36. Indeed the Defendant did not tender any proper summary judgment evidence in support of his response.

37. Because a respondent to a motion for summary judgment must "articulate the precise manner in which evidence he sets forth supports his claims," and because Fed. R. Civ. P. 56 "does not impose a duty on a court to sift through the record in search of evidence to support a party's opposition to summary judgment," *Quinn v. Roach*, 2007 WL 922235, at *3 (E.D. Tex. 2007) (*citing Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir.1996)), the Defendant's failure to tender any summary judgment evidence resulted in the recognition of certain admitted material facts pursuant to E.D. TEX. LOCAL R. CV–56(c).

38. The Court determined in its "Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment" on October 22, 2012, that the admitted material facts were sufficient to fulfill the Plaintiff's burden to establish under §727(a)(3) that the Defendant failed to keep and preserve financial records and that such a failure prevented the Plaintiff from ascertaining the Debtor's financial condition.[30]

39. The Court further determined, however, that the Defendant's deficient response to the Motion for Partial Summary Judgment would not preclude a trial on the sole remaining §727(a)(3) issue — whether the Defendant's failure to maintain sufficient financial records was justified under all of the circumstances — upon which the Defendant would carry the burden of proof at trial.

---

[30] The Court subsequently denied the Defendant's motion for reconsideration by which he sought to remedy his earlier evidentiary omissions. "An unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Templet v. Hydrochem, Inc.,* 367 F.3d 473, 479 (5th Cir.2004) (*citing Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir.1991)).

*Was the Failure to Maintain Records Justified?*

40. Notwithstanding the Defendant's repeated attempts at trial to establish the scope and nature of the documents he had provided, the partial summary judgment granted to the Plaintiff *established* that the Defendant failed to keep and preserve recorded financial information from which his financial conditions and transactions might be ascertained.

41. Thus, the sole issue for trial is whether that established failure was justified under the circumstances.

42. The evidence established, indeed the Defendant admitted, that he is an experienced and sophisticated businessman who has been involved in residential and commercial real estate ventures for decades.

43. The Defendant's schedules clearly reflect that his business interests were extensive, voluminous and complex.

44. The schedules reveal the Defendant's involvement with at least 21 different business entities, encompassing all types of business associations, the vast majority of which were solely owned and solely directed by the Defendant.[31]

45. The Defendant was experienced in real estate ventures of various types. His business success is reflected in his ownership of a $3.5 million home in Valley View, Texas and an $875,000 vacation home in Eagle, Colorado.[32]

46. The Defendant's extensive business holdings also led to considerable financial liabilities. The Defendant scheduled $3.5 million in secured claims on Schedule D and general unsecured claims on Schedule F in the amount of $43.9 million.[33]

47. The Defendant really offers no significant, probative evidence to justify his failure to maintain adequate records over a business empire of considerable size and sophistication.

---

[31] Ex. 11, particularly questions 13 & 14 of the Statement of Financial Affairs.

[32] *Id*. regarding Schedule A.

[33] *Id*.

48. In light of his extensive business involvement, the Defendant had a clear duty to preserve his business records, notwithstanding geographic relocations and/or other challenges.

49. The explanations offered by the Defendant regarding his failure to maintain and produce his financial records are not credible.

50. The explanations offered by the Defendant regarding his failure to maintain and produce his financial records are not reasonable.

51. Given the experience and business sophistication of this Defendant, his failure to preserve significant and relevant documentation to explain his financial affairs was not justified under all of the circumstances of this case.

52. To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## *CONCLUSIONS OF LAW*

1. The Court has jurisdiction to consider the adversary complaint in this proceeding pursuant to 28 U.S.C. §§1334 and §157.

2. This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (I), and (J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3. In an action to determine the dischargeability of a debt, the creditor has the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

4. "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson)),* 107 F.3d 355, 356 (5th Cir. 1997).

5. The fact that there is a debt owing by the Defendant to the Plaintiff is established

through the factual findings and judgment issued in the State Court Litigation. However, this Court retains exclusive jurisdiction to determine whether that debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 285, n.11, (1991); *Fielder v. King (Matter of King),* 103 F.3d 17, 19 (5th Cir. 1997).

*§727(a)(3).*

6.  Section 727(a)(3) of the Bankruptcy Code provides:

    The court shall grant the debtor a discharge —

    > unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transaction might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

7.  Thus, a discharge is denied to an individual debtor under §727(a)(3) for a failure to preserve documentation from which creditors can ascertain his financial condition and determine the nature of his financial dealings.

8.  As this Court has previously noted,

    > A discharge is denied to an individual debtor under this subsection for a failure to preserve documentation from which creditors can ascertain his financial condition and determine the nature of his financial dealings. Individuals who desire the privilege of a discharge are required to provide their creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial accuracy for a reasonable period past to present. Section 727(a)(3) is intended to allow creditors and/or the trustee to examine the debtor's financial condition and determine what has passed through a debtor's hands. It serves as a limitation upon a debtor's right to a discharge because creditors are not required to risk having the debtor withhold or conceal assets under the cover of a chaotic or incomplete set of books or records.

    *Neary v. Guillet (In re Guillet)*, 398 B.R. 869, 888 (Bankr. E.D. Tex. 2008) (citations and internal quotations omitted).

9. Section 727(a)(3) "ensures that creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *Stapelton v. Yanni (In re Yanni)*, 354 B.R. 708, 712 (Bankr. E.D. Pa. 2006).

10. Though an impeccable system of bookkeeping is not required, "creditors should not be required to speculate about the financial condition of the debtor or hunt for the debtor's financial information." *Hughes v. Wells (In re Wells),* 426 B.R. 579, 594 (Bankr. N.D. Tex. 2006).

11. Thus, a plaintiff seeking to deny a discharge to a debtor under §727(a)(3) must prove that a debtor: (1) failed to keep and preserve financial records; and (2) that this failure prevented the plaintiff from ascertaining the debtor's financial condition. *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003).

12. Intent is not an element. The premise of the subsection is that such financial documents would have been available under normal circumstances except for the failure of the debtor to maintain or preserve them. If this evidentiary burden is sustained,

> . . . the burden shifts to the debtor to show the inadequacy is justified under all of the circumstances. The Fifth Circuit has never delineated a precise threshold beyond which a debtor becomes accountable for further recordkeeping. A debtor's financial records need not contain "full detail," but there should be written evidence of the debtor's financial condition.

*Guillet,* 398 B.R. at 889, citing *Cadlerock Joint Venture, L.P. v. Sauntry (In re Sauntry)*, 390 B.R. 848, 855 (Bankr. E.D. Tex. 2008) (citations and quotations omitted).

13. If the failure to keep adequate financial records is established, the burden of proof shifts to a debtor to show that such failure was justified under all of the circumstances of the case. As the Fifth Circuit has stated,

> [T]he level of the debtor's sophistication and extent of his business activities will bear on the adequacy of his recordkeeping. The justification inquiry should include the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to the debtor

   in his business; and any other circumstances that should be considered in the interests of justice.

*Womble v. Pher Partners (In re Womble)*, 108 Fed. App'x. 993, 996 (5th Cir. 2004); *Bell v. Claybrook (In re Claybrook)*, 385 B.R. 842, 851-52 (Bankr. E.D. Tex. 2008).

14. Upon consideration of those factors and, in light of:

   (1) the Defendant's failure to keep and preserve his financial records,
   (2) thereby preventing the Plaintiff from ascertaining his financial condition, and
   (3) the Defendant's further failure at trial to demonstrate by a preponderance of the evidence that his recordkeeping deficiencies were justified under all of the circumstances,

   the discharge of debts for the benefit of Tommy L. Goff must be denied pursuant to §727(a)(3).[34]

15. "It has been said many times that receiving a discharge in bankruptcy is a privilege, not a right. In order to have entitlement to that privilege, certain basic financial record keeping by the debtor is of paramount importance. . . . The integrity of the bankruptcy process depends upon having some reasonable and reliable paper trail. The regrettable consequence of failure to have adequate records must be the denial of a discharge. *Neary v. Hughes (In re Hughes)*, 353 B.R. 486, 502 (Bankr. N.D. Tex. 2006).

16. To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

17. An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 05/28/2013

_____
THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

[34] Accordingly, the Plaintiff's complaint under §523(a) has been rendered moot and need not be reached.